UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MILAD JAMALI,

　　　　　　　　　Petitioner,

　　　v.

TODD BLANCHE, *et al.*,

　　　　　　　　　Respondents.

Case No. C26-1894-MLP

ORDER

　　　Petitioner Milad Jamali, through counsel, filed a verified petition for writ of habeas corpus under 28 U.S.C. § 2241, arguing that his detention by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, has become indefinite. (Dkt. # 1.) He seeks release from custody and injunctive relief related to his future redetention and third-country removal. (*Id.* at 21.) Respondents filed a return (dkt. # 9), supported by a sworn declaration from U.S. Department of Homeland Security ("DHS") Deportation Officer Andre Ouk (dkt. # 10), and an unsworn declaration from their counsel, Lawrence Van Daley (dkt. # 11). Petitioner filed a traverse in reply. (Dkt. # 12.)

ORDER - 1

Having reviewed the parties' submissions and the governing law, the Court GRANTS the petition in part for the reasons set forth below.[1]

## I.    BACKGROUND

Petitioner is a native and citizen of Afghanistan who first entered the United States on or about January 21, 2025. (Dkt. # 1 at 5; Ouk Decl., ¶ 4.) He was apprehended by U.S. Border Patrol and processed for expedited removal under 8 U.S.C. § 1225(b)(1). (Ouk Decl., ¶ 4; Van Daley Decl., ¶ 2, Ex. 2.) He was transferred to the NWIPC on February 2, 2025, where he has remained detained since. (Ouk Decl., ¶¶ 5, 23.)

While detained at the NWIPC, Petitioner was referred to U.S. Citizenship and Immigration Services ("USCIS") after expressing a fear of harm if he returned to Afghanistan. (Ouk Decl., ¶ 5.) On March 25, 2025, USCIS determined that Petitioner is more likely than not to be tortured in Afghanistan if returned. (*Id.*, ¶ 7.)

Officer Ouk states that between May 23, 2025, and June 4, 2025, DHS Enforcement and Removal Operations ("ERO") sent inquiries to the consulates of Columbia, the Philippines, the United Kingdom, Mongolia, Paraguay, Spain, Australia, Chile, and Denmark, seeking those countries' acceptance of Petitioner. (Ouk Decl., ¶¶ 8-10.) Columbia and Denmark denied ERO's requests, and the remaining countries have not yet responded as of June 2026. (*Id.*, ¶ 11.)

On November 24, 2025, Petitioner attended an immigration merits hearing, at which the immigration judge denied his application for asylum, ordered him removed to Afghanistan, but granted withholding of removal. (Ouk Decl., ¶ 16; Van Daley Decl., ¶ 2, Ex. 4 (order).) Petitioner did not appeal the IJ's order of removal or denial of relief and his removal order

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 4.)

ORDER - 2

became administratively final on December 24, 2025. (Ouk Decl., ¶ 16.) *See Riley v. Bondi*, 606 U.S. 259, 267 (2025) (citing 8 U.S.C. § 1101(a)(47)(b)).

On December 26, 2025, ERO served Petitioner with a Form I-229A requesting his assistance in effecting his removal, which he refused to sign. (Ouk Decl., ¶ 17; *see* Van Daley Decl., ¶ 2, Ex. 5.) On March 9, 2026, ERO met with Petitioner to discuss third-country removal options. (Ouk Decl., ¶ 18.) According to Officer Ouk, Petitioner refused to sign any documents and stated he did not want to be removed from the United States. (*Id.*) Petitioner also "provided no evidence that he had contacted any third country to facilitate removal." (*Id.*) Officer Ouk states that "ERO encouraged Petitioner to contact countries of his choice and report the results." (*Id.*)

Officer Ouk asserts that ERO met with Petitioner again on April 13, 2025, May 12, 2026, and June 5, 2026, during which Petitioner similarly refused to sign the I-229A forms and failed to provide any evidence that he contacted other countries. (Ouk Decl., ¶¶ 19, 21-22.) Officer Ouk further states that on April 27, 2026, ERO "used the Talton facility communication system to instruct Petitioner to assist in his removal by contacting countries of his choice, providing names, phone numbers, dates of calls, and the outcomes of those contacts." (*Id.*, ¶ 20.) Officer Ouk does not explain the significance of using the Talton communication system or how it is different than other methods used to request Petitioner's assistance. (*See generally id.*)

On June 2, 2026, Petitioner filed the instant petition, asserting his continued detention violates *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). (Dkt. # 1 at 3-4.) He seeks release from immigration detention and injunctive relief related to any future redetention and third-country removal. (*Id.* at 4, 20-21.)

ORDER - 3

## II.      HABEAS LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III.      DISCUSSION

**A.      Petitioner's Detention has Become Presumptively Indefinite Under *Zadvydas*.**

The parties agree that Petitioner's order of removal is final and that his current detention is governed under 8 U.S.C. § 1231(a). (Dkt. ## 1 at 6-7, 17, 9 at 6.) The parties also agree that *Zadvydas v. Davis*, 533 U.S. 678 (2001) provides the appropriate framework to guide the Court in deciding whether a noncitizen's post-final-order detention has become effectively indefinite but disagree on whether it affords Petitioner relief here. (Dkt. ## 1 at 6-7, 9 at 6-8.) The Court therefore applies the framework articulated in *Zadvydas*, which, for the following reasons, compels Petitioner's release.

In *Zadvydas*, the Supreme Court construed 8 U.S.C. § 1231(a)(6) to authorize postremoval-period detention only for the period reasonably necessary to effect removal. 533 U.S. at 689, 699. The Court adopted a presumption that detention up to six months after the removal order becomes final is reasonable when it is related to effectuating removal. *Id.* at 701. "After this six-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* If removal is not reasonably foreseeable, "continued detention is no longer authorized by statute." *Id.* at 699.

Respondents acknowledge that Petitioner's removal period began on December 24, 2025. (Dkt. # 9 at 7.) At the time of this Order, Petitioner will have spent just over six months in postremoval detention and is therefore beyond the presumptively reasonable six-month period articulated in *Zadvydas*. 533 U.S. at 701.

Petitioner also asserts that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." (Dkt. # 1 at 17 (quoting *Zadvydas*, 533 U.S. at 701).) He argues that his removal to Afghanistan would be illegal based on the IJ's grant of withholding. (*Id.* at 3.) He further argues that the government has not made any effort to have him removed to a third country. (*Id.*)

In response, Respondents assert that Petitioner has "not met his initial burden under *Zadvydas*" . . . , but "[e]ven if he had, the Government has more than rebutted it." (Dkt. # 9 at 8.) Respondents point to their "formal inquiries" submitted to nine countries made shortly after Petitioner's withholding of removal was granted. (*Id.* at 7.) Respondents also point to the "multiple in-person meetings and communications via the Talton system specifically requesting Petitioner . . . assist in identifying and contacting potential receiving countries." (*Id.* at 8.) Respondents argue, "[t]his is not a case of prolonged inaction or diplomatic stalemate", but rather ERO's "active engagement constitutes good reason to believe that removal to at least one willing third country is reasonably foreseeable." (*Id.*) The Court is not persuaded that such limited information rebuts Petitioner's showing.

First, while Petitioner's detention may have been just short of the six-month presumptive period at the time Respondents filed their return (*see* dkt. # 9 at 7), that presumptively reasonable period has now been exceeded.

ORDER - 5

In addition, Petitioner certainly meets his burden to show that his removal to Afghanistan is not significantly likely to occur, as the parties agree that Petitioner has been granted withholding of removal, which statutorily prohibits the government from removing him to the designated country on his removal order. (Dkt. ## 1 at 3, 9 at 5, 7.) *See also* 8 U.S.C. § 1231(b)(3)(a).

To the extent *Zadvydas* also requires Petitioner to show there is no significant likelihood of removal to *any country* in the reasonably foreseeable future (as opposed to only the country designated on his removal order—an issue not present in *Zadvydas*), the Court also finds that he meets that burden. While the Court disagrees with Petitioner insofar as he argues Respondents have done *nothing* to secure his removal to a third country (*see* dkt. # 1 at 3), it does agree that, on this record, there is little evidence tending to support the government's argument that his removal to any country is significantly likely to occur in the reasonably foreseeable future.

Well over a year ago, Respondents sought the agreement from several different countries to accept Petitioner, but the record reflects Respondents are no closer to effectuating Petitioner's removal to any of those countries than they were at the time those "formal inquiries" were sent. Nor does the record support Respondents' argument that they are "active[ly] engage[d]" with those countries (*see* dkt. # 9 at 8) such that it could support any inference that Petitioner's removal is increasingly likely or foreseeable. The record shows that as of early June 2025, inquiries to the Philippines, the United Kingdom, Mongolia, Paraguay, Spain, Australia, and Chile remain "pending or under active consideration." (Dkt. # 9 at 7.) Respondents do not explain the difference between a pending inquiry and one under active consideration. (*Id.*) Nor do Respondents provide any additional detail beyond the fact that ERO has "inquired," such as whether any embassy has responded or whether ERO sent travel document requests. Rather,

ORDER - 6

Respondents' argument appears to be: "the greater the number of inquiries, the greater the odds of removal." (*Id.* at 8 ("Such active engagement constitutes good reason to believe that removal *to at least one willing third country* is reasonably foreseeable.") (emphasis added).)

Not only does this fail to shed light on Petitioner's individual circumstances, *see Duong v. Bondi*, 817 F. Supp. 3d 1095, 1101 (W.D. Wash. 2025) (citing *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152-53 (D. Mass. 2025)) (requiring an individualized analysis), but Respondents' belief that removal is foreseeable is also unsupported by the evidentiary record. As Respondents acknowledge, "[n]o specific third country has been selected for Petitioner's removal, no Notice of Removal has been issued, and no removal attempt is scheduled." (Dkt. # 9 at 8.) Respondents do not provide a typical response timeframe for the countries contacted, nor explain whether the government has previously succeeded in removing noncitizens who are similarly situated to Petitioner.

It has now been over one year since ERO sent inquiries to the countries identified above. Other than asking Petitioner to essentially find his own country for removal (*see* Ouk Decl., ¶¶ 18-22), there is little else in the record to show the government has made any progress toward removing Petitioner. "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701. The Court finds it notable that Officer Ouk does not state that Petitioner's removal is reasonably foreseeable *as to any country* in his declaration. (*See generally* Ouk Decl.) There is no other evidence in the record tending to show Petitioner faces likely removal in the reasonably foreseeable future.

In sum, the Court finds Petitioner's postremoval detention has exceeded the presumptively reasonable six-month period articulated in *Zadvydas* and that the government has

ORDER - 7

failed to rebut Petitioner's showing that there is no significant likelihood of his removal in the reasonably foreseeable future. Accordingly, his current detention is no longer authorized by statute, and he must be released on appropriate conditions of supervision. 533 U.S. at 696 (citing 8 U.S.C. §§ 1231(a)(3), 1253; 8 C.F.R. § 241.5 (establishing conditions of release after removal period)).

### B.    Remaining claims and requested relief.

Petitioner also seeks to prohibit the government from redetaining him in the future without first satisfying certain conditions. (Dkt. # 1 at 21.) First, he requests an injunction prohibiting the government from redetaining him without first holding a hearing at which Respondents bear the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since Petitioner was previously released. (*Id.*) He also seeks a similar injunction that would preclude the government from redetaining him without first (1) obtaining a valid travel document to a third country; (2) providing that travel document to him and his lawyer; and (3) giving him the opportunity to challenge the third country removal "as detailed in other grounds." (*Id.* (first citing *Do v. Scott*, 2025 WL 3496909, at *6 (W.D. Wash. Dec. 5, 2025), then citing *Tang v. Bondi*, 2025 WL 3551381, at *3 (W.D. Wash. Dec. 12, 2025)).)

The petition does not provide any factual development or legal arguments related to redetention beyond a summary conclusion that Petitioner's "prospective unlawful redetention would constitute an irreparable injury that could not be redressed by an award of damages." (Dkt. # 1 at 18.) Petitioner does not challenge his initial detention at the border as unlawful, which undermines any argument that he faces a cognizable risk of unlawful redetention in the future. Further, Petitioner confusingly mentions having been "previously released" (*see id.* at

ORDER - 8

21), but the evidence shows he has been continuously detained since he entered the United States. Petitioner has not shown a threat of irreparable harm related to his redetention. His request is accordingly denied.

Petitioner also brings claims related to his third-country removal under the Fifth and Eighth Amendments, the INA, the Convention Against Torture, and implementing regulations. (Dkt. # 1 at 17-20.) He seeks a court order preventing his removal to a third country without first receiving notice and a meaningful opportunity to respond in compliance with the law in reopened removal proceedings. (*Id.* at 21.) He also seeks to prevent his removal to any third country "where he is likely to face imprisonment or other punishment upon arrival." (*Id.*) Respondents argue that Petitioner's requests related to third-country removal are not ripe and lack merit. (Dkt. # 9 at 8.)

The Court begins by observing that Petitioner's removal to a third country is not just possible—it appears to be the *only* option for the government now that his removal to Afghanistan has been withheld. Turning to the merits of Petitioner's argument, however—that he is likely to face removal to a third country without adequate notice and an opportunity to challenge that removal or removal to a country where he will punished or imprisoned—the Court finds it notable that he does not challenge the government's conduct regarding DHS' third-country removal efforts thus far. (*See generally* dkt. # 1.) Petitioner does not, for example, suggest that he was not provided adequate notice or an opportunity to object to his removal to the countries identified above, or that, should the government ultimately remove him to one of those countries, he is likely to face the punishment or imprisonment he seeks to avoid with his request here.

ORDER - 9

Instead, Petitioner challenges DHS' third-country removal policies generally and cite to cases seemingly inapplicable to his. (*See* dkt. # 1 at 12 (discussing the government's negotiations with El Salvador, Panama, Costa Rica, South Sudan, and Eswatini to imprison noncitizens, oftentimes arbitrarily and indefinitely).) The Court does not find these generalized arguments demonstrate that Petitioner faces a risk of irreparable injury related to third-country removal. Nothing from the Court's Order here prevents Petitioner from seeking relief in the future should it become necessary.

Finally, Petitioner seeks to enjoin the government from requiring his enrollment in GPS monitoring upon his release. (Dkt. # 1 at 16.) He argues that the government has "frequently been imposing a condition of GPS monitoring" on noncitizen habeas petitioners who are released in this District. (*Id.*) In support, Petitioner cites to what he characterizes as a DHS "memorandum" appended to his petition which purportedly memorializes a policy that ERO not release any noncitizen on orders of release or supervision "without technology." (*Id.* (citing dkt. # 1-1 at 2).) Respondents are entirely silent on this issue in their return. (*See generally* dkt. # 9.)

There is no evidence to support Petitioner's argument that released noncitizens in this District are required to wear GPS monitoring devices. The memorandum appears to be an email, from an unknown sender, to "All ERO Personnel" that discusses changes to reporting requirements for noncitizens enrolled in Alternative to Detention (ATD) programs. (Dkt. # 1-1 at 2.) As Petitioner acknowledges, however, the memorandum discussed above comes from the docket in *T- v. McShane*, No. 25-cv-05788-KSM (E.D. Pa. Nov. 7, 2025)—*i.e.*, a case outside this District. The native source of that email, the authenticity, the identity of the sender, and whether it would apply to Petitioner should he be released, are not explained by Petitioner. While

ORDER - 10

Respondents' silence on this issue is notable, Petitioner still bears the burden to show likely irreparable injury by a preponderance of the evidence. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2008); *Davis*, 384 F.3d at 638. With the foundational issues identified above unresolved by the current record, the Court does not find that burden met. Petitioner's request is therefore denied.

### IV.   CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

(1)   Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

    (a)   Within **twenty-four (24) hours**, Respondents shall release Petitioner from immigration detention under conditions consistent with applicable statutory and regulatory authority; and

    (b)   Within **two (2) business days**, Respondents shall file a status report with the Court confirming Petitioner's release.

(2)   Petitioner's requests for injunctive relief related to redetention, third-country removal, and GPS monitoring are DENIED without prejudice.

Dated this <u>2nd</u> day of July, 2026.

_____
MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 11